**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 10-22096-CIV-GRAHAM/TORRES**

| | |
|---|---|
| ITL INTERNATIONAL, INC., et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| WALTON & POST, INC., | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**PLAINTIFFS ITL INTERNATIONAL, INC.,
MARS, INCORPORATED, AND WM. WRIGLEY JR. COMPANY'S
MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT WALTON & POST,
INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiffs ITL International, Inc. ("Master Foods"), Mars, Incorporated ("Mars, Inc.") and Wm. Wrigley Jr. Company ("Wrigley") (together, "Mars") hereby oppose Defendant Walton & Post, Inc.'s ("WPI") Motion to Dismiss (D.E. 19).  Contrary to WPI's assertion (*id.* at 1), this is not a collateral attack on foreign litigation over whether WPI is entitled to a termination payment from Master Foods and Mars, Inc. under Dominican Republic law.  This case is about WPI's continuing breaches of its agreement with Master Foods not to sue, and to settle under an agreed formula; its ongoing breach after March 2010 of its promise to Master Foods not to interfere in Mars' business after termination; its unauthorized use of Mars, Inc. trademarks after termination; and Wrigley's termination of WPI in July 2010.  WPI says that its promises may only be enforced in the Dominican Republic where they are unenforceable.  The law is not so absurd.  A Florida contract entered by a Florida corporation in Miami is enforceable under Florida law, where "the enforceability of contracts is a bedrock principle of our society."  *U.S. Project Mgmt., Inc. v. Parc Royale E. Dev., Inc*., 861 So. 2d 74, 77 (Fla. Dist. Ct. App. 2003).

WPI raises specters of "thorny issues of foreign law" and "interference with foreign courts."  On a motion to dismiss, however, the complaint *is* the truth.  Here, the complaint alleges that (1) WPI filed a complaint in a Dominican trial court for $14 million in compensation under Dominican legislation protecting local distributors against termination in certain circumstances; (2) the Dominican trial court dismissed WPI's complaint; (3) a Dominican court of appeals reversed and awarded $14 million without remand for trial; (4) that ruling is stayed pending higher appeal; and (5) nothing in this case is intended to contest any compensation rights under Dominican law.  (D.E. 14 ¶¶ 30-32, 57.)  The First Amended Complaint ¶ 76 alleges that Mars is "entitled to a permanent injunction against [WPI] taking any further steps to pursue the Dominican Actions or collection of any judgments in such actions[,]" but, whether *entitled* to such relief or not, Mars *seeks* narrower relief.  In its Prayer for Relief ¶ c, Mars seeks a Judgment enjoining WPI "from any *further* breaches of contract" (emphasis added).  Mars seeks to enjoin further breaches, not ongoing breaches, because *Canon Latin America, Inc. v. Lantech (CR), S.A.*, 508 F.3d 597, 602 (11th Cir. 2007) (per curiam), holds that Mars' remedy for WPI's suit is to seek damages here.

In *Canon*, Lantech had sued Canonlat in Costa Rica for compensation for termination under Costa Rica Law 6209, the Costa Rican analogue to Dominican Republic Law 173.  *Id.* at 599.  Because an agreement forbade the foreign action, Canonlat sued Lantech for breach in this Court and obtained an anti-suit injunction.  *Id.* at 600.  Represented by WPI's counsel, Lantech showed what Mars shows here; namely, that "the only substantive issue in the Costa Rican action is a claim arising from Law 6209 for unlawful termination of an exclusive distributorship," that "[n]o claim under Law 6209 is before the district court," and that "[i]nstead, the only substantive issues before the district court are common law contract and quasi-contract claims."  *Id.* at 601.

It was well said.  The Eleventh Circuit agreed, holding that "Lantech's Costa Rican action hinges on statutory rights that *are unique to Costa Rica* and that *cannot be resolved by a judgment of the district court on Canonlat's claims in Florida*."  *Id.* at 602 (emphasis added).

Therefore, pursuant to *Canon*, it is permissible for execution of independent judgments to proceed independently, at different times and in different fora, notwithstanding WPI's efforts to confuse the issues.  Indeed, such independence is necessary to avoid anti-suit injunctions.  Under *Canon*, neither jurisdiction imposes its bedrock principles of public policy upon the other.

## STANDARD OF REVIEW

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'"  *See Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n.12 (11th Cir. 2005) (citations omitted).  Moreover, "courts 'view the allegations of the complaint in the light most favorable to the plaintiff[s] . . . and accept all reasonable inferences therefrom.'"  *Id.* (citation omitted) (alteration in original).

WPI's *res judicata* and statute of limitations arguments are affirmative defenses that must be pleaded in an Answer.  Fed. R. Civ. P. 8(c)(1).  "Generally, a party cannot base a 12(b)(6) motion on *res judicata* [because] [t]hat doctrine must be pleaded as an affirmative defense."  *Moch v. E. Baton Rouge Parish Sch. Bd.*, 548 F.2d 594, 596 n.3 (5th Cir. 1977).[1]  Likewise, "[a] statute of limitations bar is 'an affirmative defense, and . . . plaintiff[s][are] not required to negate an affirmative defense in [their] complaint.'"  *La Grasta v. First Union Sec., Inc.*, 358

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

F.3d 840, 845 (11th Cir. 2004) (alterations in original).  An exception to the general rule exists only where the affirmative defense is apparent on the face of the complaint and raises no disputable issues of fact.  *See, e.g.*, *Tello*, 410 F.3d at 1288 & n.13 ("Dismissal under . . . 12(b)(6) on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred. . . . [and] only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." (internal quotation marks omitted)).  As shown below, the complaint affords no basis for a preclusion or a limitations defense.

In the Eleventh Circuit, motions to dismiss based on abstention grounds, such as WPI's "international comity" argument, have likewise been construed as Rule 12(b)(6) motions.  *See Republic of Honduras v. Philip Morris Cos., Inc.*, 341 F.3d 1253, 1255-56 (11th Cir. 2003) (construing abstention under the "revenue rule"—"a long-standing common law rule that prevents the courts of one sovereign from enforcing or adjudicating tax claims from another sovereign"—as a Rule 12(b)(6) issue); *Luckey v. Harris*, 896 F.2d 479, 481 (11th Cir. 1989) (Edmondson, J., dissenting from denial of reh'g en banc) (stating that where *Younger* abstention was proper, "[t]he action was thus properly dismissed because it failed to state a claim for which relief could be granted.  Defendants have a right to avoid not only the judgment, but the process of defending themselves in federal courts; that is what Rule 12(b) is about").  WPI's comity argument is therefore subject to the 12(b)(6) standard.

A motion to dismiss on *forum non conveniens* grounds is based in the "inherent authority of the federal courts," *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 206 n.2 (S.D.N.Y. 2005); *cf. Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1173 (10th Cir. 2009) ("[A] motion to dismiss based on *forum non conveniens* is not a motion to dismiss for improper venue."), and the Court may properly consider facts presented affidavits.  *See, e.g.*, *Wilson v. Island Seas Inv., Ltd.*, 590

F.3d 1264, 1272 (11th Cir. 2009).  As shown below, however, there are no *forum non conveniens* grounds for dismissal.

WPI's argument that its Dominican subsidiary is a required party constitutes a motion to dismiss "for failure to join a party under Rule 19" pursuant to Rule 12(b)(7).  "[C]ourts are loathe to grant motions to dismiss of this type."  *Microsoft Corp. v. Cietdirect.com LLC*, No. 08-60668-CIV, 2008 WL 3162535, at *5 (S.D. Fla. Aug. 05, 2008) (quoting *Sever v. Glickman*, 298 F. Supp. 2d 267, 275 (D. Conn. 2004)).  The movant bears the burden of proving that the absent party is necessary and indispensable.  *Id.* (citation omitted).  "A determination on 'a motion to dismiss for failure to join a necessary and indispensable party requires the Court to accept the allegations of the complaint as true, and the [c]ourt may go outside the pleadings and look at extrinsic evidence.'"  *Id.* (citation omitted) (alteration in original).  The Motion to Dismiss fails under the 12(b)(7) standard.

## FACTUAL BACKGROUND

For purposes of the Motion to Dismiss, as shown above, the Court should accept as true the allegations of the First Amended Complaint and not consider any facts outside its four corners.  On *forum non conveniens* and Rule 19 issues, as shown in Sections III-IV of the Argument, facts outside the complaint might be considered but are not relevant here.  Moreover, contrary to WPI's conclusory assertion that "[s]ubstantive matters are governed by Dominican Republic Law" (D.E. 19 at 6 n.3), Mars' claims for breach of the Importer Agreement are governed by Florida law, as shown in Section V.  Thus none of the statements of fact made by WPI under "Factual Background," or elsewhere in its Memorandum of Law or separate Motion for Judicial Notice, have any bearing on the disposition of the Motion to Dismiss.

<u>**ARGUMENT**</u>

**I.**     ***RES JUDICATA* AND COLLATERAL ESTOPPEL DO NOT APPLY.**

As shown above, the Court need not consider WPI's *res judicata* and collateral estoppel arguments (or its limitations argument addressed below) because they are affirmative defenses not properly before the Court on a motion to dismiss.  If the Court were to consider them, it should conclude that WPI's preclusion contentions are fatally flawed.

The question whether a foreign proceeding has any preclusive effect in a diversity action to enforce a contract must be resolved according to the *res judicata* law of the forum state.  *See, e.g.*, *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 483 F.3d 1265, 1271 (11th Cir. 2007); *W. Group Nurseries, Inc. v. Ergas*, 211 F. Supp. 2d 1362, 1368 (S.D. Fla. 2002). Although this action arises in federal question and supplemental jurisdiction, as well as diversity, the Court should apply Florida law uniformly.  WPI agrees that Florida *res judicata* law should govern (D.E. 19 at 6 n.3), but then goes on to rely almost exclusively on cases that apply federal *res judicata* principles.  *See Borrero v. United Healthcare of N.Y., Inc.*, 2010 U.S. App. LEXIS 13738 at *22-*35 (11th Cir. July 6, 2010) (applying federal *res judicata* law to RICO claims); *Jaffree v. Wallace*, 837 F.2d 1461, 1467 (11th Cir. 1988) (applying federal *res judicata* law to § 1983 claims); *Nebula Glass Int'l, Inc. v. Glasslam N.G.I., Inc.*, No 05-60704, 2006 U.S. Dist. LEXIS 97571, at *10 (S.D. Fla. Oct. 30, 2006) (applying, improperly, federal *res judicata* law to diversity causes of action).  Regardless, WPI filed its original pleadings in March 2007 (D.E. 14 ¶¶ 26-28), termination was effective in June 2007 (*id*. ¶ 23), and federal *res judicata* "does *not* apply where the facts giving rise to the second case only 'arise after the original pleading is filed in the earlier litigation.'"   *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1298 (11th Cir. 2001) (citation omitted).

In Florida, "[i]n order for a final judgment to bar further litigation based upon principles of *res judicata* the judgment must reflect 1) identity of the thing sued for; 2) identity of the cause of action; 3) identity of persons and parties of the action; and 4) identity of the quality in the person for or against whom the claim is made."  *U.S. Project Mgmt.*, 861 So. 2d at 76 (citation omitted); *Hittel v. Rosenhagen*, 492 So. 2d 1086, 1089 (Fla. Dist. Ct. App. 1986) (citations omitted).  WPI's *res judicata* argument fails Florida's test.

### A.      There is no identity of causes of action.

*First*, "[i]dentity of the causes of action is established where the facts which are required to maintain both actions are *identical*."  *Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1209-10 (Fla. Dist. Ct. App. 2005) (emphasis added); *see also U.S. Project Mgmt.*, 861 So.2d at 77.  As alleged in the First Amended Complaint ¶ 30, the Dominican action rests on Law No. 173, which "in certain circumstances affords local distributors a right to receive certain compensation from foreign manufacturers upon termination."  Duly taking that allegation as true, the Dominican action would be maintained on the basis of evidence whether the circumstances surrounding termination gave rise to compensation rights.  By contrast, the circumstances of Mars' termination of WPI are irrelevant in this case; what matters here is that WPI made a claim for compensation, did not settle at 5% of the last twelve months' sales, began to interfere with Mars' business in the Dominican Republic after the appellate decision, continued using the Mars Marks on the World Wide Web after termination, and now has been terminated by Wrigley.

*Res judicata* would not be a bar even if "the facts [were to] overlap to a degree," *see Tyson*, 890 So. 2d at 1210, but here there is not even a partial overlap of the evidence necessary to support WPI's claims in the Dominican action and Mars' claims here.  WPI contends that it made a breach of contract claim for $3 million in *pre-termination* damages in the Dominican

Republic, but it also admits that "[t]he Court of Appeals ultimately declined to award the US$3 million notwithstanding Masterfoods' breaches because it found the US$14 million sufficient damages." (D.E. 19 at 5).  Even if the Dominican appellate court had decided WPI's alleged breach of contract claim—and WPI itself says that the court declined to do so—"an unsuccessful suit for breach of one provision should not act to bar all further suits for subsequent breaches of that contract."  *U.S. Project Mgmt.*, 861 So. 2d at 77.  Accordingly, "[t]he existence of a contractual remedy allowing one to seek all expected benefits from a breached contract should not be determinative of the identity of the cause of action for *res judicata* purposes" because, "[o]therwise, a finding of no breach in a breach of contract action will essentially give the victorious party a 'get out of jail free' card, enabling that party to subsequently breach without being subject to legal recourse." *Id.*

*Second*, Florida applies the same *res judicata* test to claims that could have been raised. Thus, in *U.S. Project Management* the party invoking *res judicata* argued that a breach claim in litigation was precluded because it could have been raised in arbitration, but the Fourth District Court of Appeals disagreed.  It held that there was no identity of claims because the evidence to maintain the two claims was different.  *See id.* at 76-77 (reasoning that were it otherwise, the moving party would have a "get out of jail free" card).  The injustice of giving the moving party a "get out of jail free card" would be compounded here because, according to WPI, a covenant not to sue is unenforceable in the Dominican action.

Further, all of Mars' claims accrued after WPI sued in the Dominican Republic.  WPI sued in March 2007 and termination occurred in June 2007, so that Mars' right to be free of a claim upon termination accrued after WPI commenced its foreign action.  Master Foods' claim for breach of the promise not to interfere accrued when WPI began to issue liens after the

Dominican court of appeals' decision, Mars' trademark claims accrued after termination, and Wrigley's claims accrued in 2010. *Res judicata* does not apply to claims that had not accrued when WPI commenced its action. *See Dadeland Depot*, 483 F.3d at 1271.

*Third*, there is no identity of causes of action according to *Canon*, 508 F.3d at 602. If a distributor's foreign claim for compensation were identical to a supplier's breach of contract claim, resolution of one would preclude the other and anti-suit injunctions would be necessary.

*Fourth*, there is no identity of causes of action because the Dominican action does not involve trademark ownership, use, or infringement. Any lien placed on the Dominican Republic trademarks does not concern the U.S. trademarks or other countries' trademarks or registrations. Mars' claims here are for WPI's unauthorized use of marks in the U.S. and worldwide. Moreover, WPI cites no authority for the view that a lien can create or transfer trademark rights.

**B.      There is no identity of parties.**

The Dominican Republic Central Bank and WPI's Dominican subsidiary were parties to the Dominican court of appeals decision but are not parties here, and Wrigley is a party here but was not a party there. The First Amended Complaint ¶¶ 27-31 alleges that WPI made the Central Bank a party to the Dominican litigation, and that the court of appeals ruled against both the Central Bank and Mars. Any contention by WPI that Wrigley and Mars are privies would have to rely on evidence beyond the scope of a motion to dismiss, which Mars would meet with evidence that Mars acquired Wrigley after the Dominican litigation commenced.[2]

**C.      There is no collateral estoppel.**

_____

[2] Because the lack of identity of causes of action and identity of parties are each dispositive of the *res judicata* inquiry, whether there is identity of the thing sued for or identity of the quality in the person for or against whom the claim is made are questions that need not be reached.

There is no basis for collateral estoppel because WPI never specifically identifies anything in the court of appeals decision that purports to decide any issue in this action.  WPI agrees that the court of appeals' decision deemed WPI's contractual promises "irrelevant" for compensation purposes (D.E. 19 at 8-9), confirming that nothing about them was decided.

### D.     The Dominican appellate decision lacks finality because it is stayed.

The Dominican court of appeals' decision "is presently stayed pending appeal to the Supreme Court of the Dominican Republic."  (D.E. 14 ¶ 31.)  A stayed decision in ongoing foreign proceedings lacks finality and cannot be recognized under Florida law.  *See Kramer v. Von Mitschke-Collande*, 5 So. 3d 689, 690-91 (Fla. Dist. Ct. App. 2008) (foreign judgment has effect under Florida law where it is not subject to a stay).

### E.     There is no domestication or evidence of the truth of what Dominican Republic courts say.

There is no Dominican court decision before this Court with the force of a judgment, nor is there any admissible evidence of the truth of what is stated in Dominican judicial documents tendered by WPI.  Mars objects on hearsay grounds to the admission of any and all evidence of Dominican judicial acts proffered by WPI for the truth of what they say.  *See United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir. 1994) (there is no hearsay exception covering foreign court findings).  Judicial notice only applies to the mere existence of foreign judicial acts, which are evidence here of WPI's breach of contract.  Mars here refers to its Opposition to WPI's Motion for Judicial Notice.

Therefore, *res judicata* and collateral estoppel afford no basis to dismiss the complaint.

## II.     INTERNATIONAL COMITY CALLS FOR BOTH THIS ACTION AND THE DOMINICAN ACTIONS TO PROCEED INDEPENDENTLY.

"Federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction conferred upon them."  *Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (11th Cir.

1994) (quoting *Colo. River Water Conser. Dist. v. United States*, 424 U.S. 800, 817 (1976)). Although a collateral attack on a foreign judgment would be a factor to be considered in an international abstention analysis, *see Daewoo Motor Am., Inc. v. Gen. Motors Corp.*, 459 F.3d 1249, 1259-60 (11th Cir. 2006), for the foregoing reasons this action is not a collateral attack on Dominican proceedings.

Indeed, WPI's failure to establish claim and issue preclusion necessarily informs and decimates its international abstention argument.  The Eleventh Circuit stated in *Daewoo*—a case WPI relies upon—that a key inquiry in the abstention determination is assessing "whether 'the central issue in dispute is a matter of foreign law and *whether there is a prospect of conflicting judgments*.'"  *Daewoo*, 459 F.3d at 1258 (quoting *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1238 (11th Cir. 2004)) (emphasis added).  The Eleventh Circuit's international abstention cases consistently and ultimately turn on the similarity of the claims in the parallel proceedings and whether conflicting judgments would arise.  *Compare, e.g.*, *Turner*, 25 F.3d at 1518 n.6 (abstaining in favor of foreign judgment where "the central issue is the same in both cases") and *Daewoo*, 459 F.3d at 1259 (abstaining in favor of foreign judgment where the claims in the domestic action "arise out of the same nucleus of operative facts considered by the Korean court" and call into question the merits of the judgment approved by the Korean court), *with Canon*, 508 F.3d at 602 (denying motion to enjoin Costa Rican action where that action "hinges on statutory rights that are unique to Costa Rica and . . . cannot be resolved by a judgment of the district court on [the plaintiff's] claim in Florida").

Where, as here, no preclusion exists, there is no substantial similarity of the claims among the parallel proceedings, and ultimately no concern of potentially conflicting judgments. Accordingly, in light of the significant differences between the Dominican action and the present

case, no international abstention concerns exist that would warrant the dismissal of the present case.   Moreover, *Canon* makes clear that a controversy of this nature gives rise to competing foreign and domestic public policies that may—and should—be accommodated with each other. WPI urges that the Dominican Republic should be able to dictate its public policy here, but that would be an unnecessary perversion of comity.

The First Amended Complaint ¶ 14 alleges that Master Foods and WPI "entered into a contractually binding Importer Agreement for mutual consideration in Miami, Florida."  As that taken-as-true allegation establishes that Miami is the *lex loci contractus*, the Importer Agreement is governed by Florida law.  *See, e.g.*, *Lanoue v. Rizk*, 987 So. 2d 724, 727 (Fla. Dist. Ct. App. 2008).  And in Florida "[t]he enforceability of contracts is a bedrock principle of our society." *U.S. Project Mgmt.*, 861 So.2d at 77.   By guaranteeing to companies like Mars that their contracts with Miami businesses like WPI will be enforced, Florida public policy creates local jobs in international trade.

Borrowing Solomon's judicial robes in *Canon*, the Eleventh Circuit has reconciled American and foreign public policies by envisioning two independent judgments, one in this Court and one in a foreign court, so as to avoid one jurisdiction dictating its values to the other. There is no need for one jurisdiction to enjoin the other because the foreign action "hinges on statutory rights that are unique to [the foreign country] and that cannot be resolved by a judgment of the district court on [the supplier's] claims in Florida."  *Canon*, 508 F.3d at 602.

In practice if, hypothetically, this Court were to enter judgment in Mars' favor, such a judgment would order WPI to pay Master Foods a liquidated amount of known damages (*e.g.*, Dominican attorneys fees and costs, trademark infringement damages etc.), enjoin WPI against further breaches of contract and uses of the Marks and Wrigley marks, declare that Wrigley has

no obligation to WPI, and declare WPI obligated to pay Master Foods an additional unliquidated amount of damages that would range from $0 to more than $14 million depending on the final judgment in the Dominican Republic.   Likewise if, hypothetically, the Dominican Republic courts were to enter a final executable judgment in WPI's favor, such a judgment might order Master Foods and Mars, Inc. to pay a liquidated amount (presently unknown).   Since one judgment does not resolve the other under *Canon*, the actions should proceed independently. That is the result that *Canon* mandates in order to avoid dictating one sovereign's public policy upon the other.

Fostering international comity in this manner is particularly appropriate here because all the parties are Americans.   Unlike in *Turner*, *Ungaro-Benages*, and *Daewoo*, in this case, international comity is not concerned about enabling a foreign sovereign to look after the rights of its citizens, since this controversy is between American investors.

There is therefore no basis for international abstention.

## III.     WPI FAILS TO SATISFY THE *FORUM NON CONVENIENS* STANDARD.

Like its other contentions, WPI's *forum non conveniens* argument erroneously presupposes that this action is a re-litigation of, or attack upon, the Dominican Republic case. For the reasons set forth through this opposition brief, that assertion is legally wrong and contrary to the relevant facts, all of which are asserted in the First Amended Complaint and none of which WPI disputes.   Robbed of their "collateral attack" smokescreen, WPI's *forum non conveniens* arguments do not come close to making a case for denying American plaintiffs access to an American forum.

Master Foods' claim for breach of WPI's unambiguous promise that "[u]pon termination neither party may claim compensation or damages of any sort from the other party" requires only

two facts for adjudication: (a) WPI made that promise; and (b) WPI made a claim for compensation upon termination.  Master Foods' claim for breach of the unambiguous settlement agreement ("If, despite the foregoing, the Importer is by law entitled to such compensation or damages, the parties hereby agree to settle all claims by a payment of up to a maximum of five percent (5%) of the value of Products free on board (FOB) paid for by the Importer within the twelve (12) months preceding termination") depends for adjudication on only one additional fact: (c) WPI refuses to settle on that basis.  Master Foods' claim for breach of WPI's unambiguous promise "[u]pon termination . . . not [to] do or cause to be done anything which might interfere with or affect the importation, distribution or sales of Products in the Territory" may be adjudicated based on only one more fact: (d) WPI issued liens on Mars' Dominican business.  Facts (a), (b), (c) and (d) are alleged in the complaint (D.E. 14 ¶¶ 16, 18, 25-28, 30-31, 34, 37-39) and do not appear to be in genuine dispute.  To further simplify matters, Mars is prepared to limit its quantum of damages to attorneys fees and costs incurred in the Dominican Republic, plus a declaration covering the compensation WPI wins in the Dominican Republic, if any, in breach of its contractual promises.

Neither the events before termination nor the circumstances of termination are relevant here.  Thus, WPI's arguments that "the parties performed their obligations . . . in the Dominican Republic for two decades" and that "[m]ost proof and evidence relating to the performance of the agreement is located in the Dominican Republic" (D.E. 19 at 14) are inapposite.  Likewise, WPI's contention that the "Dominican Republic courts have already amassed nearly all of the relevant evidence to Plaintiffs' present claim" (*id.*) is simply wrong—although that evidence might be relevant to WPI's claim in the Dominican courts, the only evidence relevant to Master Foods' claims here concerns the facts set forth above.  WPI's efforts to conjure images of

unavailable Dominican witnesses and "a dozen banker's boxes of documents [in the Dominican Republic], the majority of which are in Spanish" (*id.*), ignore the reality that such witnesses and documents are irrelevant to the claims before this Court.

In light of these considerations, WPI's argument falls far short of the Eleventh Circuit's *forum non conveniens* standard, especially given the strong presumption in the Eleventh Circuit in favor of an American plaintiff's choice of forum:  "[I]n this Circuit we have long mandated that district courts 'require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country.'" *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004) (quoting *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1308 n.7 (11th Cir. 1983)).  WPI has not proffered "positive evidence of unusually extreme circumstances" to warrant denying Americans their choice of this American forum.

Also telling are WPI's cursory discussion of the adequacy of the Dominican Republic as an alternative forum for Mars' claims, and its failure to discuss at all whether Mars could "reinstate [its] suit in the alternative forum without undue inconvenience or prejudice." *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001).  WPI must bear the burden to "demonstrate that the alternative forum offers at least some relief," *id.*, but WPI does not even try.  That is unsurprising, given that a central theme of WPI's other arguments for dismissal is that Dominican legislation denies Mars the means to enforce its contract rights in the Dominican Republic.  As the Second Circuit explained in *Norex Petroleum Ltd. v. Access Industries, Inc.*, 416 F.3d 146 (2d Cir. 2005), "the court, in ruling on a *forum non conveniens* motion, cannot sensibly conclude that the foreign jurisdiction provides an 'adequate alternative forum' for the

claim" where the latter "would be barred in the alternative foreign jurisdiction."  *Id.* at 159

(citations omitted).  Thus, *forum non conveniens* is inapplicable for the additional reason that the

Dominican Republic is not an adequate alternative forum for Mars' claims.

## IV.  WPI'S DOMINICAN SUBSIDIARY IS NOT AN INDISPENSABLE PARTY.

Like its other contentions, WPI's argument that its Dominican subsidiary Walton & Post,

S.A. ("WPSA") is an indispensable party under Rule 19 rests on the incorrect premise that Mars

is attacking a foreign judgment to which WPSA is a party.  This action will not resolve either

WPI's or WPSA's foreign claim to compensation, as the complaint expressly "does not affect

WALTON & POST's contractual obligations or its liability to MASTER FOODS for breaching

them."  (D.E. 14 ¶ 29.)  Furthermore, the Eleventh Circuit "accepts the majority viewpoint . . .

that joint obligors are not indispensable parties to a suit based on breach of contract."  *Brackin*

*Tie, Lumber & Chip Co. v. McLarty Farms, Inc.*, 704 F.2d 585, 586-87 (11th Cir. 1983) (per

curiam).  Accordingly, WPI's argument that WPSA is an indispensable party is unavailing.

## V.  MARS STATES CLAIMS UPON WHICH RELIEF CAN BE GRANTED.

WPI contends that the complaint should be dismissed under Rule 12(b)(6) because the

Importer Agreement is governed by the laws of the Dominican Republic, and because the

trademark claims lack merit.  WPI's argument misapprehends the Rule 12(b)(6) standard.  As

shown above, the merits are not properly decided on a Rule 12(b)(6) motion.  Instead, "courts

'view the allegations of the complaint in the light most favorable to the plaintiff[s], consider the

allegations of the complaint as true, and accept all reasonable inferences therefrom.'"  *Tello*, 410

F.3d at 1288 n.12 (citations omitted).  WPI's motion fails under the 12(b)(6) standard.

*First*, the First Amended Complaint ¶ 57 alleges that "[t]his complaint does not claim that

Dominican Republic Law No. 173 is inapplicable to the Importer Agreement," but this does not

mean that the Importer Agreement is governed by Dominican Republic law.  Like the Costa Rican legislation at issue in *Canon*, Dominican Republic Law No. 173 is social legislation that aims to provide compensation, *regardless* of contractual provisions relating to termination or their governing law.  Here, the First Amended Complaint ¶ 14 alleges that Master Foods and WPI entered into "a contractually binding Importer Agreement for mutual consideration in Miami, Florida."  Under that taken-as-true allegation, as shown earlier, the Court should apply Florida's choice of law principles based on *lex loci contractus* to hold that Florida law governs the Importer Agreement.  *See, e.g.*, *Lanoue*, 987 So.2d at 727; *Jemco, Inc. v. United Parcel Serv., Inc.,* 400 So. 2d 499, 501 (Fla. Dist. Ct. App. 1981).  Under Florida law, the provision in paragraph 1 of the Importer Agreement stating that "[u]pon termination neither party may claim compensation or damages of any sort from the other party" is an enforceable covenant not to sue, as it is an agreement not to make a claim otherwise available.  *See Auto-Owners Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 547 So. 2d 148, 152 (Fla. Dist. Ct. App. 1989); *Shay v. First Fed. of Miami, Inc.*, 429 So. 2d 64, 66 (Fla. Dist. Ct. App. 1983).  Thus, to say that a claim may be available to WPI under Dominican Law 173 says nothing about the law governing WPI's contractual promises.

*Second*, WPI's statute of limitations argument is misguided because it is based on Dominican Republic law and selectively omits allegations of the complaint.  Where a contract is governed by Florida law, as here, the Court should apply Florida's statute of limitations to a claim for breach of contract.  *See, e.g.*, *Klein v. Frank*, 534 F.2d 1104, 1107 (5th Cir. 1976).  Because the Florida limitations period applicable to claims for breach of a written contract is five years, Fla. Stat. Ann. § 95.11(2)(b), and WPI began to breach the contract on or about March 2007 (D.E. 14 ¶ 26), Mars' claims are not barred.  Furthermore, under Florida law, the statute of

limitations is tolled while the breach is continuous and ongoing. *See Arlaine & Gina Rockey, Inc. v. Cordis Corp.*, No. 02-22555-CIV, 2004 WL 5504978, at *49 n.15 (S.D. Fla. Jan. 5, 2004) ("The 'continuing breach' doctrine . . . applies to contracts calling for a single, continuous performance."). Here, WPI's promise not to make a claim calls for a single continuous performance, and it is alleged that "[a]ll of those breaches of contract are continuous and ongoing, because WALTON & POST continues to prosecute the Dominican Actions and the related embargo proceedings" (D.E. 14 ¶ 39). Thus the continuing breach doctrine applies.

In addition, not only does WPI fail to provide any authority or explanation for its assumption that Dominican law governs the statute of limitations, WPI's mere quotation of Article 2273 of the Dominican Civil Code (D.E. 19 at 16-17) does not begin to raise a prima facie case as to the meaning or application of that law in Dominican courts. Moreover, even if, contrary to the well-established principles discussed above, WPI were right that Article 2273 governs the statute of limitations issue here and that it would impose a two-year limit on Mars' breach of contract claims, WPI has breached both the settlement provision and the non-interference provision within the last two years. The settlement provision ("If, despite the foregoing, the Importer is by law entitled to such compensation or damages, the parties hereby agree to settle all claims by payment of up to a maximum of five percent (5%) of the value of the Products free on board (FOB) paid for by Importer within the twelve (12) months preceding termination") applies when the Importer is "by law entitled" to compensation, which according to WPI occurred when the Dominican court of appeals ruled in March 2010. Mars would show that the 5% formula requires WPI to settle, *today*, at most for about $300,000. The non-interference provision was breached by WPI's issuance of liens after March 2010.

*Third*, Mars has adequately stated claims for relief under the Lanham Act and related provisions of the common law.  WPI's claim to "rights in Mars' trademarks" is not supported by its purported lien on Mars' Dominican Republic trademark registrations, nor its translation of the Dominican court of appeals decision, neither of which is properly before this Court, particularly on a Rule 12(b)(6) motion.  None of that has any bearing on whether WPI is authorized to use Mars' U.S. and other non-Dominican marks in worldwide commerce.

WPI's arguments under U.S. law are equally unavailing.  As to prudential standing, WPI first neglects to inform the Court that the standing test of *Phoenix of Broward, Inc. v. McDonald's Corp.*, 489 F.3d 1156 (11th Cir. 2007), applies only to the false advertising prong (15 U.S.C. § 1125(a)(1)(**B**)) of Section 43(a) of the Lanham Act, not the unfair competition prong (§ 1125(a)(1)(**A**)).  *Phoenix*, 489 F.3d at 1163.  WPI's focus on a lack of competition between Mars and WPI similarly fails to acknowledge that the Court in *Phoenix* sets forth a five-factor test for standing—which WPI addresses only in part and in conclusory fashion—or that it expressly states that "parties who are *not* in 'direct' or 'actual' competition may nonetheless have prudential standing to bring false advertising claims."  *Id.* at 1163-64.  Indeed, "the *Conte Bros.* test is designed to determine whether the injury alleged is the type of injury that the Lanham Act was designed to redress—[which includes] erosion of the plaintiff's 'good will and reputation.'" *Id.* at 1167; *accord Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221, 234 (3d Cir. 1998).  In this light, Mars is in full agreement with the courts in *Phoenix* and *Conte* that manufacturers (like Mars) have a greater interest in vindicating the public interest than retailers. *Phoenix*, 489 F.3d at 1170; *Conte Bros.*, 165 F.3d at 235.

WPI's infringement arguments likewise miss the mark.  *First*, WPI cannot have it both ways by claiming in one trademark argument that it is Mars' authorized and exclusive distributor

in the Dominican Republic (D.E. 19 at 17-18), then claiming in another the benefits of fair-use as an "independent dealer" of Mars products (*id.* at 19).  Mars points out that its infringement claim expressly avoids implicating any issue whether WPI was validly terminated or not; namely, "[a]s [WPI] has used the MARS MARKS without acquiring products from MASTER FOODS or MARS, [WPI's] infringement of the MARS MARKS has occurred regardless of the status of the Importer Agreement with MASTER FOODS or any right of compensation in relation to its termination" (D.E. 14 ¶ 46).  *Second*, WPI's use of Mars' marks on its website is not an instance of fair use, as WPI's own citations demonstrate, because fair use provides that "only so much of the trademark may be used as is reasonably necessary to identify the product."  *Gulfstream Aerospace Corp. v. Camp Sys. Int'l, Inc.*, 428 F. Supp. 2d 1369, 1381 (S.D. Ga. 2006) (quoting *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992)).  Regardless of whether fair use might have permitted WPI to use Mars' trademarked product names on its website, it did not permit WPI to use those same products' trademarked logos.  *New Kids*, 971 F.2d at 308 n.7 (defining the "reasonably necessary" limitation on fair use by explaining that "a soft drink competitor would be entitled to compare its product to Coca-Cola or Coke, but would not be entitled to use Coca-Cola's distinctive lettering").  Accordingly, Mars has stated a claim for trademark infringement upon which relief can be granted.

## **CONCLUSION**

For the foregoing reasons, the Court should deny WPI's Motion to Dismiss the First Amended Complaint.

Dated:  August 23, 2010

Michael P. Socarras, Esq.
(admitted *pro hac vice*)
District of Columbia Bar No. 412187
**McDERMOTT WILL & EMERY LLP**
600 Thirteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202 756-8000
Facsimile: (202)  756-8087
Email: msocarras@mwe.com

Respectfully submitted,

James M. Miller, Esq.
Alexandra M. Mora, Esq.
**AKERMAN SENTERFITT**
One Southeast Third Avenue, 25th Floor
Miami, FL 33130
Telephone: (305) 374-5600
Facsimile: (305) 374-5095
Email: james.miller@akerman.com
Email:alexandra.mora@akerman.com

*Attorneys for Plaintiffs*
By:  s/ James M. Miller_____
James M. Miller, Esq.
Florida Bar No. 201308
Alexandra M. Mora, Esq.
Florida Bar No. 052368

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 23, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


s/ James M. Miller_____

James M. Miller

**SERVICE LIST**
*ITL International, Inc., et. al. v. Walton & Post, Inc.*
**Case No. 1:10-cv-22096-DLG-GRAHAM/TORRES**
**United States District Court, Southern District of Florida**

| | |
|---|---|
| James M. Miller, Esquire<br>Alexandra M. Mora, Esquire<br>**AKERMAN SENTERFITT**<br>SunTrust International Center<br>One Southeast Third Avenue, 25th Floor<br>Miami, Florida  33131-1714<br>Telephone: (305) 374-5600<br>Facsimile:  (305) 374-5095<br>Email:  james.miller@akerman.com<br>Email:  alexandra.mora@akerman.com | Alvin B. Davis, Esquire<br>Pedro Martinez-Fraga, Esquire<br>Leah B. Storie, Esquire<br>**SQUIRE, SANDERS & DEMPSEY L.L.P.**<br>200 South Biscayne Boulevard<br>Suite 4000<br>Miami, FL 33131-2398<br>Telephone:  +1.305.577.7000<br>Facsimile:   +1.305.577.7001<br>Email: adavis@ssd.com<br>Email: pmartinezfraga@ssd.com<br>Email: lstorie@ssd.com |
| Michael P. Socarras, Esquire<br>(admitted *pro hac vice*)<br>**McDERMOTT WILL & EMERY LLP**<br>600 Thirteenth Street, N.W.<br>Washington, D.C.  20005<br>Telephone: (202) 756-8000<br>Facsimile:  (202)  756-8087<br>Email: msocarras@mwe.com | Pierre H. Bergeron, Esquire<br>(admitted *pro hac vice*)<br>**SQUIRE, SANDERS & DEMPSEY L.L.P.**<br>221 East Fourth Street, Suite 2900<br>Cincinnati, OH 45202-4095<br>Telephone: +1.513.361.1200<br>Facsimile:  +1.513.361.1201<br>Email: pbergeron@ssd.com |
| *Attorneys for Plaintiffs* | *Attorneys for Defendant*<br>*(via CM/ECF)* |